UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHELE C. TETREAULT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| RELIANCE STANDARD LIFE | ) | NO. 10-11420-JLT |
| INS. CO., and THE LIMITED | ) | |
| LONG TERM DISABILITY | ) | |
| PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION ON
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

November 28, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff Michele C. Tetreault ("Tetreault") is seeking to recover long-term disability ("LTD") benefits pursuant to the ERISA Plan provided by her former employer, the defendant The Limited. The defendant Reliance Standard Life Insurance Co. ("Reliance") is the Claims Administrator of the Plan. This matter is presently before the court on the "Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies." (Docket No. 20). At issue is whether Tetreault was bound by the time periods for filing claims and appeals which are detailed in the Summary Plan Description ("SPD") but are not expressly described in the written ERISA Plan itself. It is undisputed that Tetreault was advised by Reliance about these time periods, but made

no effort to comply with them. Rather, it is Tetreault's position that, based on the recent Supreme Court decision in Cigna Corp. v. Amara, – U.S. – , 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), the administrative procedures established in the SPD are not enforceable as they are not included in the written Plan document itself.

For the reasons detailed herein, this court concludes that the procedures detailed in the SPD are enforceable. As an initial matter, the procedures detailed in the SPD are expressly incorporated into and made part of the written ERISA Plan. Therefore, if there is a requirement that the procedures be included in the Plan document, it has been satisfied. Moreover, this court concludes that there is no requirement that such ministerial details be provided in the ERISA Plan document itself. Therefore, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion for Summary Judgment for Failure to Timely Exhaust Administrative Remedies" (Docket No. 20) be ALLOWED.

## II. STATEMENT OF FACTS[1]

Tetreault was employed as a Retail Store Manager for The Limited until June 2000, when she stopped working due to back pain. (DF ¶ 1). The Limited maintains an employee welfare benefit plan (the "Plan") which is governed by the Employee Retire-

---

[1] Unless otherwise indicated, the facts are derived from Defendants' Local Rule 56.1 Concise Statement of Material Facts (Docket No. 22) ("DF") and Plaintiff's Response thereto (Docket No. 26) ("PR"). The Administrative Record ("AR") includes, among other documents, copies of the LTD Plan (AR 1-34) and the SPD (AR 35 et seq.), as well as various cited communications.

ment Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (DF ¶ 2). Tetreault's initial application for LTD benefits under the Plan was denied by Reliance's predecessor. (See Second Amended Complaint (Docket No. 16) ("Compl.") ¶¶ 14-15). Tetreault sued, and as a result of the litigation, Tetreault received benefits effective July 29, 2000. (DF ¶ 1; PR ¶ 1). These benefits continued through December 16, 2008 at which time Reliance, as the new Claims Administrator, discontinued further benefits. (DF ¶ 3). The denial letter sent to Tetreault, dated December 18, 2008, provided that she may "request a review of this determination" by submitting a written request to Reliance at a specified address. (Id.; AR 338-39). The letter further provided:

> This written request for review must be submitted within 180 days of your receipt of this letter or the last date to which we have paid, whichever is later. Your request should state the any [sic] reasons why you feel the determination is incorrect, and should include any written comments, records, or other information pertaining to your claim for benefits.

(AR 339). Thus, pursuant to this letter, the plaintiff's appeal was due by June 19, 2009. (DF ¶ 6).[2]

Tetreault was represented by counsel at the time of this denial letter. (See DF ¶ 7). Nevertheless, no appeal was taken. On June 15, 2009, plaintiff's counsel faxed a letter to Reliance purporting to be "additional notice that Ms. Tetreault *will be* appealing the

---

[2] Pursuant to applicable ERISA regulations, the appeal deadline was appropriately included in the denial letter. See 29 C.F.R. § 2560.503-1(g)(1)(iv).

adverse benefit determination of Reliance Standard." (DF ¶ 8; AR 321 (emphasis added)). However, no notice of appeal was actually filed. (See DF ¶ 8; PR ¶ 8.).

On June 17, 2009, Reliance reiterated to plaintiff's counsel the need to file an appeal within 180 days of its December 18, 2008 denial letter. (DF ¶ 9). In its letter, Reliance stated in part:

> Your letter of June 15, 2009 states that you will be submitting an appeal on behalf of Ms. Tetreault. If that appeal is not received within 180 days of her receipt of our letter of December 18, 2009 [sic],[3] it will not be accepted (absent an explanation of why it was not possible for Ms. Tetreault to have submitted an appeal within the 180 day period).

(AR 322). No response was forthcoming. (DF ¶ 10).

On May 27, 2010, more than eleven months after the 180-day period had expired, plaintiff's counsel submitted what purported to be an appeal letter and supporting documentation. (DF ¶ 10; AR 299). Therein, counsel took the position that the appeal was timely because the Plan itself did not have any 180-day period in it, and because Reliance was not prejudiced by the delay. (DF ¶ 11; AR 299-301). Only two of the 1295 pages of documentation plaintiff submitted with the letter of May 27, 2010 were not available prior to the expiration of the 180-day period (*i.e.*, June 19, 2009), and those two pages had been available since July 15, 2009. (DF ¶ 12). Reliance did not consider Tetreault's appeal, and this litigation followed.

---

[3] Earlier in this communication, Reliance had repeatedly correctly referred to its letter of December 18, 2008.

## The ERISA Plan

The LTD Plan at issue here, formally titled The Limited Long-Term Disability Program, was designed "to provide income to eligible Associates of participating Employers who suffer a Total Disability." (AR 4 (Plan § 1.1)). It was "intended to continue to meet the requirements of, and constitute an accident and health plan under, Section 105 of the Internal Revenue Code of 1986, as amended (the "Code")[.]" (Id.). The documents defining the LTD Plan are described as follows:

> 1.2 **Program Terms.** The Program constitutes part of the Limited Brands, Inc. Health Benefits Plan (the "Health Benefits Plan"). The terms of the Program as set forth in the Health Benefits Plan <u>and the summary plan description for the Health Benefits Plan</u>, as from time to time amended and/or restated, <u>are herby [sic] incorporated by reference</u>. Any reference to the summary plan description for the Health Benefits Plan includes summaries of material modifications to the summary plan description. <u>The Health Benefits Plan, the summary plan description for the Health Benefits Plan, and this document together constitute the formal plan document for the Program.</u>

(AR 4 (emphasis added)). While the written Plan document itself does not provide details of any procedures for filing claims or appealing adverse decisions, it provides as follows:

> 7.1 **Program Administration**. The Program shall be administered in accordance with the terms of the Health Benefits Plan, <u>including terms relating to claims procedures.</u>

(AR 14 (emphasis added)).

Finally, the Plan provides that the Claims Administrator, *i.e.*, "the entity designed by the Plan Administrator to receive, review and process claims for Program benefits" is

given the "discretionary authority" to make eligibility determinations, "to construe the terms of the Program, make factual determinations, decide claims, and to decide appeals of denied claims for Program benefits." (AR 5 (Plan § 2.7)). The decisions of the Claims Administrator are to be "final and binding." (Id.).

## **The Summary Plan Description**

The Limited provided its employees with a document entitled "the guide," which describes all the benefits available to them. (AR 35).[4] It is "the official summary plan description for Limited Brands benefits program," and expressly advises employees of their ERISA rights. (AR 146). The SPD has a section addressing the "health and security benefits" available to the employees (AR 99), including short-term and long-term disability coverage. (AR 122-25). Within that section is a section entitled "how to file/appeal a claim" (AR 128), which includes a description of the steps to follow when there is an adverse determination of a disability claim. (AR 131). Included therein is the requirement that: "[t]o appeal a disability claim, you must notify the claims administrator

---

[4] Tetreault contends in passing that the defendants should be "estopped" from relying on the SPD because she did not get a copy of it from Reliance until the litigation had started, despite her request. (See Pl. Opp. (Docket No. 27) at 6). Not only has Tetreault failed to develop this argument, but also since Reliance was only the Claims Administrator, and neither the Plan Administrator nor the Plan Sponsor, it had no obligation to provide her with a copy. See 29 U.S.C. § 1021. (See also AR 148, 5). Moreover, "[e]quitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit" and there must be evidence of "unequivocal, intentionally deceptive conduct" on the part of the defendant designed "to mask the truth or to lull an unsuspecting person into a false sense of security." Ortega v. Orthobiologics LLC, No. 09-2305, – F.3d –, 2011 WL 5041744, at *2 (1st Cir. Oct. 25, 2011) (internal quotations omitted). In the instant case, Reliance disclosed the 180-day appeal period repeatedly, and did not attempt to interfere with Tetreault's right to appeal in any way.

in writing within 180 days of receiving the determination." (AR 131). Thus, Reliance's representation to Tetreault that she had 180 days to appeal the discontinuance of her benefits was consistent with the appeal period set forth in the SPD.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard of Review

As an initial matter, the parties disagree as to the appropriate standard of review. The plaintiff claims that this court should use the well-recognized summary judgment standard under Fed. R. Civ. P. 56(c), and view the record favorably to the plaintiff. (See Pl. Opp. (Docket No. 27) at 4-5). Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (the court must view the record in the light most favorable to the non-moving party and must indulge all reasonable inferences in that party's favor). The defendants contend correctly, however, that the Rule 56 standard has no application to ERISA. (See Defs. Reply Mem. (Docket No. 30) at 2). Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005) (since "review is based only on the administrative record before the plan administrator" and "summary judgment is simply a vehicle for deciding the issue" of disability under ERISA, "the non-moving party is not entitled to the usual inferences in its favor"). Rather, the defendants argue, the court should apply the well-established principle that "[w]hen an ERISA plan gives the administrator the discretion to determine eligibility for benefits (as in this case), a reviewing court must uphold that decision unless it is 'arbitrary, capricious, or an abuse of discretion.'" Cusson v. Liberty Life Assur. Co.

of Boston, 592 F.3d 215, 224 (1st Cir. 2010) (internal quotation omitted). While the defendants have accurately stated the law, that principle is not controlling here.

The instant case raises a question of law: whether the appeal procedures must be included in the written Plan document, and not just the SPD, to be enforceable. Therefore, the decision is one for the court to make, and the administrator's legal conclusion is not entitled to any deference. See Matassarin v. Lynch, 174 F.3d 549, 563 (5th Cir. 1999) ("A court reviews de novo a plan administrator's legal conclusions regarding the meaning of a contract or statute."), cited in Coffin v. Bowater, Inc., 385 F. Supp. 2d 38, 49 (D. Me. 2005).

The material facts of this case are not in dispute, and the only issue before this court is the timeliness of the plaintiff's appeal. The parties do not dispute that if the 180-day appeal period was part of the requirements of the ERISA Plan at issue, it was within Reliance's authority to deny the appeal as untimely. See Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) (claimant required to comply with time requirements for appeals). It also is undisputed that counsel's notice that "Ms. Tetreault will be appealing" was not sufficient to trigger an appeal. See Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355, 364 (7th Cir. 2011) ("letter unambiguously expressed an intention to appeal but was not itself a request for review"). On the other hand, if the Plan is found not to have included the 180-day claims procedure, it is undisputed that the defendants' motion must be denied. Pursuant to 29 C.F.R. § 2560.503-1(l), "[i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a

claimant shall be deemed to have exhausted the administrative remedies under the plan" and may pursue any rights of appeal "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." Thus, there are no factual findings or interpretations of the Plan made by the Claims Administrator to which this court should defer. Addressing the issue *de novo*, and for the reasons detailed herein, this court concludes that the plaintiff's appeal was untimely.

### B. The Inclusion of the Procedure in the SPD was Consistent with the Statutory Scheme

As detailed herein, the ERISA statute and regulations adopted thereunder only require that the details of the claims procedure be spelled out in the SPD. There is no requirement that they be included in the written plan document itself.

ERISA covers, inter alia, "employee welfare benefit plan[s]" which are defined as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer" for the purpose of providing participants "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident [or] disability . . . ." 29 U.S.C. § 1002(1). Pursuant to 29 U.S.C. § 1102(a)(1), "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." In addition to this written instrument, the statutory scheme requires than an SPD, "written in a manner calculated to be understood by the average plan participant," be furnished to plan participants and beneficiaries. 29 U.S.C. § 1022(a). The SPD is to "be sufficiently

accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Id.

The statutory scheme makes it clear that any claims procedure, including appeal rights, are to be included in the SPD.  Thus, 29 U.S.C. § 1022, providing for the SPD, expressly requires that the SPD contain "the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title.).  29 U.S.C. § 1022(b).  In contrast, 29 U.S.C. § 1102, requiring that every plan have a written instrument, makes no mention of claims procedures, although it does identify other "requisite" or "optional features" of every employee benefit plan.

To the extent that the ERISA statutes identify the overall requirements of any claims procedures that may be adopted by an ERISA plan, the statute is silent as to the details of those procedures, leaving the details to be determined by the Secretary of the Department of Labor.  In particular, 29 U.S.C. § 1133, entitled "Claims procedure," provides that "[i]n accordance with the regulations of the Secretary every employee benefit plan" must

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

(Emphasis added).  The statute itself is "ultimately indifferent to the level of detail" regarding any claims procedure that may be adopted.  See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 80, 115 S. Ct. 1223, 1229, 131 L. Ed. 2d 94 (1995) (addressing requirement in § 1102(b)(3) that the written plan instrument include "a procedure for amending such plan").  See also 29 U.S.C. § 1135 ("the Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter.").  This "indifference to detail" further supports the conclusion that the written plan instrument does not need to include the ministerial procedure of an appeal process.

The Secretary's regulations require that the details of a claim procedure must be included in the SPD.  Specifically, pursuant to the regulations, every ERISA plan must "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations," and, to be considered "reasonable," the "description of all claims procedures[,]" including all "applicable time frames" must be "included as part of a summary plan description."  29 C.F.R. § 2560.503-1(b)(2).  The regulations provide further that the claimant must have "at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination[.]"  29 C.F.R. § 2560.503-1(h)(3)(i) and (h)(4).  Thus, while the ERISA plan must "establish and maintain" claims procedures, the only place that either the statute or the regulations require that a description of the procedures themselves be included is in the SPD.  Reliance complied with these requirements.

### C. <u>Cigna Corp. v. Amara</u>

The plaintiff contends that, despite the statutory scheme described above, the recent case of <u>Cigna Corp. v. Amara</u>, – U.S. – , 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), mandates that any terms found in the SPD must also be included in the written plan instrument. For the reasons that follow, this court disagrees. In any event, also as detailed below, the SPD in the instant case must be deemed part of the written plan instruments. Therefore, under any scenario Reliance's inclusion of the claims procedures in the SPD was appropriate and the provisions are enforceable.

In <u>Amara</u>, employees of CIGNA Corp. challenged amendments to a pension plan on the grounds that the company had failed to give them proper notice of the changes, and in particular to inform them that the new plan provided less generous benefits in certain respects. <u>Amara</u>, 131 S. Ct. at 1870. The lower court had found that the company's disclosures regarding changes in the plan were incomplete and misleading, and violated certain of ERISA's notice provisions. <u>Id.</u> at 1874-75. Relying on ERISA § 502 (a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which authorizes a plan participant to bring suit to "recover benefits due to him under the terms of his plan[,]" the lower court reformed the terms of the new plan as a remedy. <u>Id.</u> at 1871, 1875-76.

Among the issues considered by the United States Supreme Court was whether ERISA § 502(a)(1)(B) authorized the relief provided by the lower court. <u>Id.</u> at 1871. In concluding that it did not authorize such relief, the Court determined that the provision did not grant courts power to change the terms of an ERISA plan. <u>Id.</u> at 1876-77. Of

relevance to the instant case, the Court also rejected an argument, made by the Solicitor General, that the lower court did not change the terms of the plan, but rather "enforce[d] the plan's terms as written" because "the 'plan' include[d] the disclosures that constituted the summary plan descriptions." Id. at 1877. Thus, the Supreme Court rejected the Solicitor General's assertion "that the terms of statutorily required plan summaries . . . necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself." Id. Instead, the Court held that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." Id. (emphasis in original).

The Court based its ruling on several points. First, the language of the statute, 29 U.S.C. § 1022(a), authorizing the SPD, required that the SPD "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations *under* the plan." (Emphasis added). The Court found that the words "'under the plan,' suggests that the information *about* the plan provided by those disclosures is not itself *part of* the plan." Amara, 131 S. Ct. at 1877 (emphasis in original).

Moreover, the Supreme Court relied on the fact that a plan's sponsor (the employer) has different responsibilities than a plan administrator. As the Court explained:

-13-

> The plan's sponsor (*e.g.*, the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument "a procedure" for making amendments. § 402, 20 U.S.C. § 1102. The plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form.

Id. The Court found further that it had "no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly by including them in the summary plan description." Id.

Finally, the Court found that it was inconsistent with the objective of the SPD to be a "clear, simple communication" to make it a legally binding document. Id. As the Court explained, "[t]o make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers." Id. at 1877-78.

Based on Amara, Tetreault argues that the claims procedures found only in the SPD are not legally enforceable, and, therefore, her appeal was timely. As detailed below, not only is Amara distinguishable, but also Reliance's claims procedures are enforceable in any event because in the instant case the SPD is part of the written plan instrument.

### **Amara is Distinguishable**

The situation addressed in Amara is significantly different than the one presented here, and the bases for the Supreme Court's decision do not have any application to the

issue before this court, *i.e.*, which document must include the details of a claim procedure. As an initial matter, in <u>Amara</u>, the Court addressed whether the terms of an SPD may be enforceable with respect to material, substantive terms of a pension plan concerning how benefits are calculated. Therefore, in that case, there was a significant concern that the SPD was going beyond summarizing actual plan terms, and was allowing the plan administrator (as opposed to the employer) to create substantive new terms. In the instant case, however, there is no such conflict. The written plan instrument specifically refers to and incorporates the SPD, thereby eliminating any potential inconsistencies. Moreover, the claims procedures are ministerial and not substantive. Since the employer is not involved in evaluating claims, it is not a usurpation of the employer's authority to have the claims administrator detail in the SPD the procedural steps that employees must follow.

Even more importantly, while <u>Amara</u> relied on the language of 29 U.S.C. § 1022, requiring an SPD to be provided to plan participants, the Court was not called upon to address the language in § 1022(b) which expressly requires the details of a claims procedure to be included in the SPD. Nor was the Court confronted with regulations which also require that the challenged procedures be detailed in the SPD. Nothing in <u>Amara</u> can be read to invalidate this express language found in both the statute and applicable regulations.

Finally, unlike the situation in <u>Amara</u>, it is consistent, not inconsistent, with the objective of the SPD to include the details of the procedures claimants are to follow in the

SPD, and only in the SPD. These procedures are to be clearly and simply described so that the employees know what to do. It is virtually impossible to think of why anyone would benefit by including a more "lawyerly" description of the steps to be followed in the written plan instrument itself, so that these steps can then be summarized in the SPD. In sum, none of the factors which led to the Supreme Court's decision in Amara would require that specific procedures to be followed by employees, which by statute and regulation are to be expressly included in the SPD, must also be included in the written plan document.

This court also notes that requiring the details of a claim procedure to be included in the written plan instrument would lead to an "improbable result" by requiring that the ERISA plan be formally amended every time there was a change of personnel, or mailing address, or other ministerial fact which is included in the SPD claims procedures. ERISA does not require such an outcome. See Curtiss-Wright Corp., 514 U.S. at 81, 115 S. Ct. at 1229 (rejecting the argument that the requirement in 29 U.S.C. § 1102(b)(3) that every pension plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan" as requiring a specific identification of "individuals or bodies within a company" responsible for amending the plan: such a reading "would lead to an improbable results" as it would unnecessarily invalidate plans). For all these reasons, this court concludes that Amara does not compel the requirement that the details of the claims procedure be included in the written plan instrument.

**The Claims Procedure is Incorporated Into the Plan Instrument**

Even assuming that <u>Amara</u> requires that the details of the claims procedure be included in the written plan instruments, that requirement has been satisfied in the instant case. As detailed above, the written Plan itself expressly provides that the SPD is one of the documents that "together constitute the formal plan document for the Program." (AR 4). The ERISA requirement that the Plan be reflected in a "written instrument" is "to ensure that participants are on notice of the benefits to which they are entitled and their own obligations under the plan." <u>Wilson v. Moog Auto., Inc. Pension Plan</u>, 193 F.3d 1004, 1008 (8th Cir. 1999) (citing, <u>inter alia</u>, <u>Curtiss-Wright Corp.</u>, 514 U.S. at 83, 115 S. Ct. at 1230). However, there is no requirement that the written instrument be comprised of only a single document. <u>Wilson</u>, 193 F.3d at 1008. Therefore, documents that are expressly referenced in and incorporated into the Plan document can constitute part of the Plan. <u>Id.</u> at 1008-09 (plant closing agreement negotiated by union and employer included among the plan documents). <u>See</u> <u>also</u> <u>Palmiotti v. Metro. Life Ins. Co.</u>, 423 F. Supp. 2d 288, 299 (S.D.N.Y. 2006) ("ERISA provisions do not restrict the number or the kinds of documents that can constitute a written plan"; LTD Booklet part of the official plan documents). Therefore, the claims procedure detailed in the SPD is, in fact, included in the written plan document.

Moreover, the ERISA Plan at issue expressly provides that it "shall be administered in accordance with the terms of the Health Benefits Plan, including terms relating to claims procedures." (AR 14). Thus, not only is the SPD included in the plan documents,

but also all of the terms of the claims procedures are expressly incorporated as well. This is sufficient to meet the statutory requirement that, "[i]n accordance with the regulations of the Secretary" the plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1333. See Curtiss-Wright Corp., 514 U.S. at 80, 115 S. Ct. at 1229 (ERISA plan provision that the plan may be amended "by the company" was sufficient to meet statutory requirement that every pension plan "provide a procedure for amending such plan" since the statute "requires only that there *be* an amendment procedure" and is "ultimately indifferent to the level of detail in an amendment procedure"). For all these reasons, the 180-day appeal period was validly included in The Limited's ERISA Plan. Since Tetreault failed to comply with the 180-day appeal period, her purported appeal was appropriately rejected by Reliance.

### D. **The Non-Prejudice Rule does not Apply**

Tetreault argues that even if her appeal was untimely, Reliance should have considered it under the "notice-prejudice rule." (Pl. Opp. (Docket No. 27) at 12). Pursuant to this "rule" "an insurer may not refuse to consider an untimely claim without first demonstrating 'actual prejudice' from the untimely submission." (Id.) In Massachusetts, this principle is codified in Mass. Gen. Laws ch. 175, § 112, which provides that liability insurers "shall not deny insurance coverage to an insured because of a failure of an insured to seasonably notify an insurance company of an occurrence . . . unless the insurance company has been prejudiced thereby." While the Massachusetts statute is not

preempted by ERISA, see UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 366-73, 119 S. Ct. 1380, 1386-89, 143 L. Ed. 2d 462 (2000), there is no support for extending this "rule" to ERISA cases.

As an initial matter, "the fact that the state legislature has expressly limited the rule to liability insurers weighs heavily against extending the rule to disability insurers." Walley v. Agri-Mark Inc., No. 00-11393-RWZ, 2002 WL 1796917, at *2 (D. Mass. Aug. 1, 2002). Furthermore, other courts which have addressed this issue have "decline[d] to read a notice-prejudice requirement into the ERISA statute." Monast v. Johnson & Johnson, 680 F. Supp. 2d 299, 306 (D. Mass. 2010). As the court explained in Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355 (7th Cir. 2011), after noting that, like the instant case, "the benefits at issue are disability benefits, not liability insurance, which is the type of insurance governed by the [state] statute" at issue:

> state notice-prejudice rules typically apply only to initial denials of benefits. "There is no ... federal case that has applied a notice-prejudice rule outside the initial review context" and "[t]o extend the notice-prejudice rule to ERISA appeals would extend the rule substantially beyond its previous uses." Chang v. Liberty Life Assurance Co. of Boston, 247 Fed. Appx. 875, 878 (9th Cir. 2007). Like the Chang court, we are "not inclined to make such a significant and unprecedented extension of the rule." Id. Finally, as already has been noted, Edwards has never explained the reason for the untimeliness of her administrative appeal and therefore has not shown either that it was not reasonably possible to give notice within the prescribed time or that notice was given as soon as reasonably possible. Thus, the Wisconsin notice-prejudice rule does not render Edwards's administrative appeal timely.

Id. at 363.  For similar reasons, this court also declines to extend the notice-prejudice rule to ERISA cases, and thereby disrupt the regulatory scheme.  Moreover, Tetreault's record is equally silent as to the reason for the eleven month delay in filing her appeal.  Accordingly, the notice-prejudice rule does not excuse the fact that Tetreault's appeal was untimely.

## IV.  **CONCLUSION**

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion for Summary Judgment for Failure to Timely Exhaust Administrative Remedies" (Docket No. 20) be ALLOWED.[5]

       / s / Judith Gail Dein
       Judith Gail Dein
       U.S. Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).